IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

PATIENCE R. THOMASSON and
ZAAHIR GARNER,                        )
                                      )
            Plaintiffs,               )
                                      )
      v.                              )        1:19CV1164
                                      )
GREENSBORO NEWS & RECORD, INC.,       )
GREENSBORO NEWS & RECORD, LLC,        )
BH MEDIA GROUP, INC., and B.H.        )
MEDIA INCORPORATED,                   )
                                      )
            Defendants.               )

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

This matter is before the court on Defendants' Motion to Dismiss Plaintiffs Patience R. Thomasson and Zaahir Garner's Complaint for violations of North Carolina law. (Doc. 7.) Defendant BH Media Group, Inc., on behalf of all Defendants, moves to dismiss Plaintiffs' Complaint under Federal Rule of Civil Procedure 12(b)(6). (Id.) For the reasons set forth herein, this court will deny in part and grant in part Defendants' Motion to Dismiss.

## I.   BACKGROUND

### A.   Parties

Plaintiffs Patience R. Thomasson and Zaahir Garner are citizens and residents of Greensboro, North Carolina. (Complaint

("Compl.") (Doc. 3) ¶¶ 1-2.) Defendant Greensboro News & Record, Inc., was a North Carolina corporation incorporated on January 28, 1969. (Defs.' Br. in Supp. of Partial Mot. to Dismiss ("Defs.' Br.") (Doc. 8) at 1 n.1; see also Compl. (Doc. 3) ¶ 4.) Defendant Greensboro News & Record, LLC, was a North Carolina limited liability company. (Id.; see also Compl. (Doc. 3) ¶ 3.) Greensboro News & Record, Inc., merged into Greensboro News & Record, LLC, on August 28, 2008, and on January 31, 2013, the membership interests of Greensboro News & Record, LLC, were sold and assigned by Landmark Media Enterprises, LLC, a Virginia limited liablity company, to World Media Enterprises, Inc. (Defs.' Br. (Doc. 8) at 1 n.1.) World Media Enterprises was incorporated in Delaware on May 14, 2012, and changed its name to BH Media Group Holdings, Inc., on November 14, 2013 (Id.) BH Media Group Holdings merged into its parent company, BH Media Group, Inc., on December 28, 2015. (Id.) BH Media Group, Inc., is a Delaware corporation and the parent company which holds the membership interests of Greensboro News & Record, LLC. (Id.; see also Compl. (Doc. 3) ¶ 5.) B.H. Media Incorporated is a Delaware corporation which has been inactive since approximately March 1, 2001. (Defs.' Br. (Doc. 8) at 1 n.1; see also Compl. (Doc. 3) ¶ 6.)

- 2 -

**B.** **Procedural History**

Plaintiffs filed their Complaint in North Carolina state court, naming as defendants Greensboro News & Record, Inc.; Greensboro News & Record, LLC; BH Media Group, Inc. ("BHMG"); and B.H. Media Incorporated. (Doc. 1-2.) Defendants filed a Notice of Removal, (Doc. 1), and in that notice, asserted that BHMG is the only defendant "still in existence as of the date of the filing of the Complaint, and therefore the only defendant 'properly joined and served' . . ." (Id. ¶ 5.) Plaintiffs have not challenged these allegations. (See Pls.' Resp. Br. in Opp'n to Defs.' Partial Mot. to Dismiss. ("Pls.' Resp.") (Doc. 11).) In the absence of any argument from Plaintiffs, this court will proceed with BHMG as the sole defendant in this case.[1]

Jurisdiction is based upon diversity of citizenship pursuant to 28 U.S.C. § 1332(a). (Doc. 1 ¶ 8.) Plaintiffs are citizens and residents of North Carolina, (Compl. (Doc. 3) ¶¶ 1-2), and Defendant BHMG ("Defendant") is a Delaware

---

[1] Given this finding, and to avoid further confusion, this court will refer only to the single Defendant in its analysis. This court will not, however, modify quotations or titles of documents that reference multiple defendants.

To the extent that this litigation continues following this court's partial dismiss of the claims against Defendant, and in the absence of arguments by Plaintiffs, this court encourages the parties to refer to Defendant as a single entity.

corporation with its headquarters in Omaha, Nebraska. (Doc 1-3 at 2; Doc. 9 at 1.)

In response to the Complaint, Defendant filed an Answer, (Doc. 9), and a Partial Motion to Dismiss, (Doc. 7). The Motion seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(6) for the breach of contract, negligent misrepresentation, and Unfair and Deceptive Trade Practices claims. (Doc. 7; Defs.' Br. (Doc. 8) at 1-2.) Plaintiffs have responded in opposition to the motion, (Pls.' Resp. (Doc. 11)), and Defendant has filed a Reply, (Doc. 14). The motion is ripe for ruling. For the reasons set forth herein, this court finds the motion should be granted in part and denied in part.

## C. __Factual Background__

On a motion to dismiss, a court must "accept as true all of the factual allegations contained in the complaint . . . ." Ray v. Roane, 948 F.3d 222, 226 (4th Cir. 2020) (quoting King v. Rubenstein, 825 F.3d 206, 212 (4th Cir. 2016)).

Although a motion to dismiss "tests the sufficiency of a complaint," Occupy Columbia v. Haley, 738 F.3d 107, 116 (4th Cir. 2013), and this court's evaluation is "thus generally limited to a review of the allegations of the complaint itself," Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165-66 (4th

Cir. 2016), this court may consider documents that are incorporated into the complaint by reference where the document is integral to the complaint, see id. at 166, and the plaintiff does not challenge the documents' authenticity, see Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999); see also Norman v. Tradewinds Airlines, Inc., 286 F. Supp. 2d 575, 580 (M.D.N.C. 2003) ("The underlying concern in cases applying this rule is to protect a plaintiff who might not have notice of (and an opportunity to fully respond to) facts newly introduced by the defendant in conjunction with motion of dismissal.").

This court finds that Plaintiffs' Complaint incorporates by reference the contracts entered into by both Plaintiffs. (See Compl. (Doc. 3) ¶ 29.) These contracts are integral to the allegations contained in the Complaint and uncontested. (Compare Compl. (Doc. 3) ¶¶ 29-43 with Defs.' Br. (Doc. 8).) Defendant attached both contracts as exhibits to its Memorandum in Support of the Motion to Dismiss. (Defs.' Br. (Docs. 8-1, 8-2).)

Second, Plaintiffs do not challenge the authenticity of the contracts introduced by Defendant. Plaintiffs refers to the contracts in their Complaint, (see Compl. (Doc. 3) ¶¶ 29-43), and in their response to Defendant's Motion to Dismiss, (see

- 5 -

Pls.' Resp. (Doc. 11) at 4-6.)[2] This court will therefore consider the contracts in determining the facts applicable to Plaintiffs' Complaint and Defendant's Motion to Dismiss.

The facts, construed in the light most favorable to Plaintiffs and relevant to Defendant's Motion, are summarized as follows. Additional facts will be addressed in the analysis as necessary.

Defendant is engaged in the business of newspapers and delivery of those newspapers and magazines/retail advertisements in Guilford County, North Carolina. (Compl. (Doc. 3) ¶¶ 10-11.) Defendant hired carriers to perform distribution of the newspaper, the Greensboro News & Record, to subscribers in Guilford County. (Id. ¶ 10.) Defendant produced the newspapers and solicited and maintained the subscribers of the newspapers and determined the price paid for the newspapers. (Id. ¶ 11.)

Defendant offered Plaintiffs positions as carriers. (Id. ¶ 18.) Plaintiffs' work involved a low degree of skill, (id. ¶ 24), and "included work in home deliveries." (Id. ¶ 27.) Plaintiff Thomasson worked as a carrier beginning in 2001 and

_____

[2] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

- 6 -

worked in that position until 2018 when she sustained an injury. (Id. ¶¶ 19-20.) Plaintiff Garner began working as a carrier in 2013, held that job until 2016, and then began again in 2018 and worked as a carrier until May 2019. (Id. ¶¶ 21-22.)

Plaintiffs allege that they entered into "multiple contracts" with Defendants for their work as carriers for Defendant and to deliver Defendant's "[n]ewspapers and other products" to Defendant's subscribers "and to other locations designated by" Defendant. (Id. ¶ 29.) Plaintiffs allege that Defendant was required by the contracts "to pay Plaintiffs all amounts owed for Plaintiffs' work" for Defendant, but Defendant "failed to pay the amounts owed," (id. ¶ 34), and that Defendant failed "to provide Plaintiffs with a thirty (30) day written notice before terminating [] its contract," (id. ¶ 35). Plaintiffs further allege that Defendant withheld payments to Plaintiffs for deliveries, improperly charged Plaintiffs fees, invoiced Plaintiffs improperly, and failed to refund the required bond. (Id. ¶¶ 38-41.)

## II.  **STANDARD OF REVIEW**

Defendant moves to dismiss these claims under Federal Rule of Civil Procedure 12(b)(6). (Defs.' Br. (Doc. 8) at 1-2.) To survive a Rule 12(b)(6) motion, "a complaint must contain

- 7 -

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable" and demonstrates "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556–57). When ruling on a motion to dismiss, this court accepts the complaint's factual allegations as true. Id. Further, this court liberally construes "the complaint, including all reasonable inferences therefrom, . . . in the plaintiff's favor." Estate of Williams-Moore v. All. One Receivables Mgmt., Inc., 335 F. Supp. 2d 636, 646 (M.D.N.C. 2004) (citation omitted). This court does not, however, accept legal conclusions as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

## III. **ANALYSIS**

The Complaint asserts four causes of action. The first cause of action alleges breach of contract under North Carolina law. (Compl. (Doc. 3) ¶¶ 44-50.) The second cause of action

alleges negligent misrepresentation under North Carolina law. (Id. ¶¶ 51-65). The third claim for relief alleges violations of the North Carolina Wage and Hour Act. (Id. ¶¶ 66-82.) The fourth cause of action alleges violations of the North Carolina Unfair and Deceptive Trade Practices Act. (Id. ¶¶ 83-91.) Defendant moves to dismiss only the first, second, and fourth claims. (Defs.' Br. (Doc. 8).)

### A. Plaintiffs' First Cause of Action: Breach of Contract

Plaintiffs' first cause of action alleges a claim of breach of contract. (Compl. (Doc. 3) ¶¶ 44-50.)

"'The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of [the] contract.'" Wells Fargo Ins. Servs. USA, Inc. v. Link, 372 N.C. 260, 276, 827 S.E.2d 458, 472 (2019).

Plaintiffs allege a number of material acts which they contend constitute a breach of contract by Defendant, including a failure to pay all amounts owed, charging Plaintiffs for failure to deliver newspapers, deducting unexplained fees and amounts from Plaintiffs' checks, failing to reimburse Plaintiffs for bond payments, failing to provide thirty-day notice prior to termination, and failing to provide notice of rate changes. (Compl. (Doc. 3) ¶¶ 44-50.)

- 9 -

Notwithstanding the alleged breaches of contract, Plaintiffs' only vaguely allege the existence of any contract or contractual terms. Plaintiffs allege the existence of "[v]alid written contracts," (id. ¶ 46), but Plaintiffs do not explain or allege the content of those written contracts, nor do Plaintiffs allege any specific contractual provisions contained within them, except for a vague "promise of payment for Plaintiffs' work," (id. ¶ 45), and that "[v]alid written contracts existed" between Plaintiffs and Defendant for Plaintiffs' work to deliver Defendant's newspapers, (id. ¶ 46).

Plaintiffs admit the contracts provided by Defendant, (see Doc. 8-1, 8-2), are the written contracts referred to in Plaintiffs' Complaint. (Pls.' Resp. (Doc. 11) at 3 ("Defendants had Plaintiffs sign contracts to classify the Plaintiffs, and other carriers, as independent contractors. Those contracts include those attached as Exhibits A and B to Defendant's Brief in support of their Partial Motion to Dismiss.").) Plaintiffs further argue:

> The first three pages of the "Independent Contractor Agreements" deal with the manner in which Defendants are to pay Plaintiffs for delivery of Defendants' Newspapers. (Doc. 8 Exhibits A & B) Under the Independent Contractor Agreements, Plaintiffs are identified as "Contractors" and Greensboro News & Record, a BH Media Company are identified as "Company." Pursuant to the Agreement, the Company is

- 10 -

> to pay Plaintiffs certain fees for the delivery of
> Defendants' Newspapers. (Ex. A p. 1, ¶ 1B; Ex. B, p. 1
> ¶ 1B) The Agreements also provide the manner in which
> the Newspapers and supplies are to be priced by
> Defendants. (Ex. A p. 1, ¶ 1A; Ex. B, p. 1 ¶ 1A)
> Plaintiffs will need to ascertain through discovery in
> this lawsuit the exact paragraphs of the contracts
> that were breached by Defendants. (Doc. 3)

(Id. at 7.)

This court finds that the contracts support a plausible breach of contract claim as alleged by Plaintiffs, but only as to certain specific provisions within the contract.

Plaintiffs have not plausibly alleged that Defendant breached the contract regarding provisions relating to the delivery of Defendant's newspapers. The contract requires Defendant to sell, and Plaintiffs to purchase, a certain number of copies of the News & Record at wholesale prices set by Defendant upon seven (7) days' notice. (Doc. 8-1 ¶ 1.A.) The contract also requires Plaintiffs to deliver, and Defendant to pay to Plaintiffs, certain delivery fees for other publications. (Id. ¶ 1.B.) Plaintiffs' allegations of Defendant's failure to pay Plaintiffs cannot be reasonably construed as relating to the section of the contract related to delivery of the News & Record, (see Compl. (Doc. 3) ¶¶ 44-50; Pls.' Resp. (Doc. 11) at 5-7), as that relationship required Plaintiffs to pay Defendant for those papers. In fact, the contract specifically requires

- 11 -

Defendant to bill Plaintiffs for each newspaper "sold to him/her during that period . . . at the above wholesale rates" and for Plaintiffs to "pay promptly in full each such billing at a time and place to be designated by" Defendant. (Doc. 8-1 ¶ 3.) Thus, the allegations in the Complaint fail to plausibly state a claim for failure to pay monies due for delivery of the News & Record.

On the other hand, Plaintiffs and Defendant also agreed that Plaintiffs would deliver other products and would be paid per copy prices based upon a delivery fee. (Doc. 8-1 ¶ 1.B.) Plaintiffs allege that the contracts with Defendant included the delivery of "Newspapers and other products" to Defendant's subscribers, (Compl. (Doc. 3) ¶ 29), and that Defendant "withheld payments to Plaintiffs for such deliveries, or failed to pay the entire amount owed to Plaintiffs, without any adequate explanation regarding the amounts withheld from Plaintiffs." (Id. ¶ 38.) Because the Contract required Defendant to pay Plaintiffs per copy prices for other products, and Plaintiffs allege Defendant did not pay these fees, Plaintiffs have plausibly alleged a claim for breach of contract regarding the failure to pay, as required under the written contract, for products other than the News & Record. Accordingly, this court

will not dismiss Plaintiffs' first cause of action under Rule 12(b)(6).

## B. **Plaintiffs' Second Cause of Action: Negligent Misrepresentation**

Defendant also moves to dismiss Plaintiffs' second cause of action, a claim alleging negligent misrepresentation. (Defs.' Br. (Doc. 8) at 11-12.) As the pleadings make clear, there is no dispute that the relationship between Plaintiffs as carriers and Defendant as a newspaper publisher was governed by the terms of the contracts. (See Compl. (Doc. 3) ¶¶ 51-65.) Nevertheless, Plaintiffs allege that Defendant "supplied information to Plaintiffs regarding Plaintiffs' compensation," (id. ¶ 54), that Defendant "intended for Plaintiffs to rely on the information," (id. ¶ 55), and that the information regarding compensation was false, (id. ¶ 56). This court finds this claim is not plausibly pled and is also barred by the economic loss rule, and thus, should be dismissed.

Defendant argues "Plaintiffs have failed to sufficiently allege facts that would show reasonable, detrimental reliance on any misrepresentation" because they have "fail[ed] [] to explain what 'information' was allegedly misrepresented" and that the express terms and conditions of the contracts preclude any reasonable reliance. (Defs.' Br. (Doc. 8) at 11.)

This court agrees.

> A negligent misrepresentation claim under North
> Carolina law arises "when a party justifiably relies
> to his detriment on information prepared without
> reasonable care by one who owed the relying party a
> duty of care." Raritan River Steel Co. v. Cherry,
> Bekaert & Holland, 322 N.C. 200, 367 S.E.2d 609, 612
> (1988). Negligent misrepresentation requires proof of
> "justifiable reliance," which is "analogous to that of
> reasonable reliance in fraud actions." Marcus Bros.
> Textiles v. Price Waterhouse, LLP, 350 N.C. 214, 513
> S.E.2d 320, 327 (1999). As Judge Wilkinson noted in
> Baltimore County, these two torts "share two essential
> elements: both require that defendant supply false
> information to plaintiff and that plaintiff
> detrimentally rely on the false statement." [Baltimore
> Cnty. V. Cigna Healthcare,] 238 Fed. Appx. [914] at
> 925 [(4th Cir. 2007)].

Topshelf Mgmt., Inc. v. Campbell-Ewald Co., 117 F. Supp. 3d 722,

728 n.3 (M.D.N.C. 2015).

In this case, the contracts and factual allegations do not

plausibly support Plaintiffs' conclusory allegation that

Plaintiffs "reasonably and justifiably rel[ied]" upon any

representation by Defendant, (see Compl. (Doc. 3) ¶ 61), or that

Defendant "controlled the formula for computing wages,

subscribers' complaints, the bond payment requests and other

financial matters that impacted Plaintiffs' compensation." (Id.

¶ 60.)

The rates of payment and the conditions of employment are

fully explained in the contracts. (See Doc. 8-1.) Plaintiffs, as

- 14 -

carriers, had the same, if not perhaps better, knowledge as to
what work each Plaintiff had performed as a carrier and how much
was owed between the parties. Even assuming Defendant was
notified of a failed delivery or some other alleged act
requiring some type of adjustment to payment, Plaintiffs do not
plausibly describe, factually, how they could have been misled
by Defendant as to any credits or adjustments. (See Compl. (Doc.
3) ¶¶ 51-65.)

　　　"Federal courts have repeatedly found that the North
Carolina tort of negligent misrepresentation sounds in fraud and
have applied Rule 9(b) to it." Topshelf Mgmt., 117 F. Supp. 3d
at 727 (collecting cases). Here, Plaintiffs have alleged a
number of categories of misrepresentation, such as a failure to
"provide Plaintiffs with true and accurate information regarding
Defendants' formula for computing Plaintiffs' compensation,"
(Compl. (Doc. 3) ¶ 58(a)), but Plaintiffs have failed to
describe at all, much less with any specificity, instances in
which any false or inaccurate information was provided, (see id.
¶¶ 51-65).

　　　In addition, Defendant argues that the economic loss rule
under North Carolina law bars Plaintiffs' negligent
misrepresentation claim. (Defs.' Br. (Doc. 8) at 7-8.) Under

- 15 -

North Carolina law, "[a] tort action does not lie against a party to a contract who simply fails to properly perform the terms of the contract, even if that failure to properly perform was due to the negligent or intentional conduct of that party . . . ." Crescent Foods, Inc. v. Evason Pharmacies, Inc., No. 15 CVS 1852, 2016 WL 5817469, at *8 (N.C. Super. Ct. Oct. 5, 2016) (quoting Spillman v. Am. Homes of Mocksville, Inc., 108 N.C. App. 63, 65, 422 S.E.2d 740, 741-42 (1992)). Plaintiffs "do not dispute that generally a breach of contract does not give rise to a tort action by the promisee against the promisor." (Pl. Resp. (Doc. 11) at 9.) However, Plaintiffs contend that the "alleged harm potentially extends beyond the subject of the Agreements . . . ." (Id. at 10 (emphasis added).) Yet, a claim is plausible on its face only if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable" and demonstrates "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556-57).

North Carolina courts take into account the availability of contractual or warranty remedies in conducting an economic loss rule analysis. See Kelly v. Georgia-Pac. LLC, 671 F. Supp. 2d 785, 794 (E.D.N.C. 2009); Hospira Inc. v. AlphaGary Corp., 194

- 16 -

N.C. App. 695, 704-05, 671 S.E.2d 7, 14 (2009), disc. review denied, 363 N.C. 581, 682 S.E.2d 210 (2009); Lord v. Customized Consulting Speciality, Inc., 182 N.C. App. 635, 641-42, 643 S.E.2d 28, 32 (2007). This inquiry is used for a plaintiff who brings a tort claim, as well as contractual or breach of warranty claims, based on the defendant's same actions. See Lord, 182 N.C. App. at 641-42, 643 S.E.2d at 32. For example, in Lord, there was no contract between the parties, but the North Carolina Court of Appeals held that the plaintiff could proceed on a negligence claim, "recogniz[ing] a means of redress for those purchasers who suffer economic loss or damage from improper construction but who, . . . have no basis for recovery in contract[.]" Id.

Following the holdings in Lord, as well as Hospira Inc., the North Carolina courts have established that a tort claim must be based on a distinct breach of duty. Here, Plaintiffs' allegations of negligent misrepresentation all arise from duties arising under the contract. (See Compl. (Doc. 3) ¶¶ 51-65.) Because Plaintiffs have not plausibly alleged a duty separate from the contract to support this tort claim, this claim will be dismissed under Rule 12(b)(6).

C. **Plaintiff's Fourth Cause of Action: Unfair and Deceptive Trade Practices ("UDTPA")**

Plaintiffs' fourth cause of action alleges a claim under N.C. Gen. Stat. § 75-1.1 et seq. (Compl. (Doc. 3) ¶¶ 83-91.) That statute provides: "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. Gen. Stat. § 75-1.1(a).

The court first observes that there is debate about whether the economic loss rule may bar a UDTPA claim in North Carolina. See Ramsey v. Bimbo Foods Bakeries Distrib., LLC, No. 5:15-CV-6-BR, 2015 WL 1611339, at *7 (E.D.N.C. Apr. 10, 2015). The district court in Ramsey noted that "[t]he North Carolina courts have not decided whether the economic loss rule applies to UDTPA claims." Id. That court "decline[d] to create North Carolina common law by extending the economic loss rule to bar plaintiff's UDTPA claim." Id. This court finds only one unpublished North Carolina Court of Appeals case, Buffa v. Cygnature Constr. & Dev., Inc., 251 N.C. App. 526, 796 S.E.2d 64, at *6 (2016), which appears to apply the economic loss rule to a UDTPA claim. In the absence of more clear precedent from the North Carolina courts, this court will therefore also decline to create North Carolina common law and will address

- 18 -

Plaintiffs' UDTPA claim only on the merits. See Ramsey, 2015 WL 1611339, at *7.

"In order to establish a violation of N.C.G.S. § 75-1.1, a plaintiff must show: (1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to plaintiffs." Gray v. N.C. Ins. Underwriting Ass'n, 352 N.C. 61, 68, 529 S.E.2d 676, 681 (2000). "The determination of whether an act or practice is an unfair or deceptive practice that violates N.C.G.S. § 75-1.1 is a question of law for the court." Id. Further, "[w]here an unfair or deceptive practice claim is based upon an alleged misrepresentation by the defendant, the plaintiff must show 'actual reliance' on the alleged misrepresentation in order to establish that the alleged misrepresentation 'proximately caused' the injury of which plaintiff complains." Sunset Beach Dev., LLC v. AMEC, Inc., 196 N.C App. 202, 211, 675 S.E.2d 46, 53 (2009) (quoting Tucker v. Boulevard At Piper Glen LLC, 150 N.C. App. 150, 154, 564 S.E.2d 248, 251 (2002)).

"North Carolina courts have repeatedly held that a mere breach of contract, even if intentional," does not rise to the level of being an unfair or deceptive trade practice. Broussard

- 19 -

v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331, 347 (4th Cir. 1998) (internal quotation marks omitted).

"North Carolina law requires a showing of 'substantial aggravating circumstances' to support a claim under the UTPA," when there has been a breach of contract. Id. Fraud constitutes such an aggravating circumstance. See Nexus Techs., Inc. v. Unlimited Power Ltd., Civil Case No. 1:19-cv-00009-MR, 2019 WL 4941178, at *6-7 (W.D.N.C. Oct. 7, 2019) (finding the plaintiff plausibly alleged a UDTPA claim based on the defendant "enter[ing] into the manufacturing agreement despite knowing that they could not deliver a manufacturing design"); Global Hookah Distribs., Inc. v. Avior, Inc., 401 F. Supp. 3d 653, 662 (W.D.N.C. 2019) (recognizing several UDTPA claims upheld on the basis of fraud); Pan-Am. Prods. & Holdings, LLC v. R.T.G. Furniture Corp., 825 F. Supp. 2d 664, 700 (M.D.N.C. 2011) ("Aggravating factors include an intentional misrepresentation for the purpose of deceiving another and which has a natural tendency to injure the other.").

This court finds Plaintiffs' allegations are insufficient to plausibly allege an Unfair and Deceptive Trade Practices claim under North Carolina law. Plaintiffs' only allegations made with any specificity relate to Defendant's alleged

misclassification of Plaintiffs as independent contractors. (Compl. (Doc. 3) ¶ 86-87.) Even assuming Plaintiffs are correct that Plaintiffs were misclassified as independent contractors, (see id.), Plaintiffs represented that their signatures on the contract "evidence[] his/her understanding that this contractual relationship is an independent contractor relationship." (Doc. 8-1 at 8.) This court finds that the pleadings plausibly allege that the independent contractor status was, at most, a mutual mistake between the parties, rather than the result of any fraud or unfair trade act or practice. Accordingly, this court will dismiss Plaintiffs' claim under Rule 12(b)(6).

## IV. <u>CONCLUSION</u>

For the foregoing reasons, this court finds that Defendant's Partial Motion to Dismiss, (Doc. 7), should be granted in part and denied in part.

**IT IS THEREFORE ORDERED** that Defendant's Partial Motion to Dismiss, (Doc. 7), is **GRANTED IN PART AND DENIED IN PART.** The motion is **GRANTED** as to Claims Two and Four, and these claims are dismissed pursuant to Fed. R. Civ. P. 12(b)(6). The motion is **DENIED** as to Claim One.

This the 30th day of September, 2020.

_____
United States District Judge